```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION


JOHN G. TEVERE and JUDITH A.    )
TEVERE,                         )
                                )
          Plaintiffs,           )
                                )
     v.                         )        No. 1:17-cv-2455
                                )
                                )
WELTMAN, WEINBERG & REIS,       )
CO., L.P.A.,                    )
                                )
          Defendant.            )
```

Memorandum Opinion and Order

In this action, plaintiffs John and Judith Tevere sue defendant Weltman, Weinberg & Reis, Co., L.P.A. ("Weltman"), a debt collection law firm, for allegedly violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, by filing and maintaining a foreclosure action against them on behalf of its client, Old National Bank. In the underlying foreclosure action, the Teveres successfully argued to the state court that the suit was barred by the Illinois single-refiling rule, *see* 735 ILCS 5/13-217, and the doctrine of *res judicata* because Weltman had already twice sued them on the loan agreement at issue. The state court dismissed the foreclosure proceeding, and the Teveres subsequently brought the present action seeking to hold Weltman liable for pursuing litigation against them that was barred by

state law. Before me are the parties' cross motions for summary judgment. For the reasons that follow, I grant the Teveres' motion and deny Weltman's motion.

I.

The story of this protracted dispute between the parties begins with a mortgage loan. In June 2005, the Teveres entered into a credit agreement with Prairie Bank and Trust Company ("PBTC") for the principal amount of $100,000.00. The loan was secured by a mortgage dated June 7, 2005, on their residence in Frankfort, Illinois. This was the Teveres' second mortgage on the property. In August 2006, the Teveres and PBTC entered into another credit agreement (the "Note"), which increased the principal amount on their loan to $225,000.00. PBTC's mortgage on the Teveres' home was modified accordingly. The Teveres used the PBTC loan to make improvements to their home, to pay off personal credit card debt, and to pay their children's college tuition, among other personal expenses.

Things did not go as planned for the Teveres. Faced with financial troubles, they defaulted on their PBTC loan in January 2012 and ceased making payments after May 2012. In June of that year, Weltman was hired by Old National Bank to collect on the Teveres' debt. According to Weltman, its client acquired the loan through a series of assignments. PBTC had purportedly assigned the loan to Integra Bank in a 2007 merger, and Old National Bank

2

purchased Integra Bank's assets through an agreement with the Federal Deposit Insurance Corporation when Integra closed in 2011.

On June 28, 2013, Weltman filed its first collection suit against the Teveres in Illinois state court. The complaint alleged that Old National had advanced funds to the Teveres pursuant to the Note, that the Teveres had not made any payments since May 2012, and that Old National was owed $222,301.30, the accelerated principal balance due on the Note, plus interest, attorneys' fees, and court costs. The Teveres were never served with the complaint and thus never filed an appearance. On September 24, 2014, Weltman voluntarily dismissed the suit without prejudice.

Two months later, on November 17, 2014, Weltman refiled its collection suit against the Teveres. Weltman's second complaint, which was nearly identical to the first, alleged breach of the same Note and sought to collect the same accelerated principal balance of $222,301.30, plus interest, costs, and attorneys' fees. The Teveres filed several motions to dismiss, arguing that Old National had not demonstrated an unbroken chain of title to the Note because it had not provided any evidence of the assignment from PBTC to Integra Bank. *See* 735 ILCS 5/2-606. The court agreed, and after Weltman failed to cure the defect, it dismissed the second collection action with prejudice on October 6, 2016. Weltman neither moved to reconsider nor appealed that dismissal on behalf of its client.

While the second collection action was still pending, however, Weltman filed yet another state court action, this time for foreclosure on the Teveres' mortgage. Filed in the chancery court on March 30, 2016, the foreclosure action alleged that the Teveres had defaulted on their mortgage as of January 2012 and owed the principal balance of $222,301.30, plus interest, late charges, costs, advances, and fees. In the complaint, Weltman asserted that Old National was the "current holder of the subject Note and Mortgage" and attached both instruments to the complaint. The complaint also named the Teveres as defendants to be held personally liable for any deficiency and included a request for a "personal Judgment for a deficiency, if applicable and sought" in its prayer for relief.

Shortly after filing the foreclosure action, Weltman sought to consolidate it with the second collection action, but that request was denied. After the collection action was dismissed with prejudice, Weltman maintained the foreclosure suit against the Teveres and eventually filed a motion for an order of default and judgment of foreclosure on March 3, 2017. The Teveres moved to dismiss the foreclosure complaint on the grounds that it was barred under the doctrine of *res judicata* and Illinois' single-refiling rule, which permits a plaintiff to refile a claim only once after a dismissal without prejudice. *See Timberlake v. Illini Hosp.*, 676 N.E.2d 634, 637 (Ill. 1997) (interpreting 735 ILCS § 5/13-217).

4

Weltman opposed the motion, but the state court sided with the Teveres. On August 15, 2017, the court dismissed the foreclosure action with prejudice. Originally, the court stated that its dismissal was on the basis of *res judicata* only. It later amended its order on the Teveres' motion for reconsideration to reflect that the dismissal was under *res judicata* and the single-refiling rule. No appeal was filed.

Before the foreclosure action was dismissed, the Teveres filed the present suit against Weltman and Old National. In June of 2018, I dismissed the two state-law counts against Old National for failure to state a claim and terminated Old National as a defendant. Still pending are the Teveres' claims against Weltman for violating sections 1692d, 1692e, and 1692f of the FDCPA when the firm filed and maintained the foreclosure action against them. *See* 15 U.S.C. §§ 1692d-1692f. Also pending is Weltman's affirmative defense, which asserts that it is shielded from liability by the bona fide error defense of § 1692k(c). Each party has moved for summary judgment on plaintiffs' claims and Weltman's affirmative defense.

## II.

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When

5

considering cross motions for summary judgment, courts must "construe all facts and inferences in favor of the party against whom the motion under consideration is made." *United Cent. Bank v. KMWC 845*, LLC, 800 F.3d 307, 310 (7th Cir. 2015).

Congress enacted the FDCPA with the goal of eliminating abusive debt collection practices. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)). To achieve this goal, the Act sets forth various standards regulating interactions between consumer debtors and debt collectors, which are enforced through administrative action and private lawsuits. *Id.* Among other things, the FDCPA prohibits debt collectors from making "false, deceptive, or misleading representation[s]" in their debt collection efforts, 15 U.S.C. § 1692e, including representations about "the character, amount, or legal status of any debt," *id.* § 1692e(2)(A). The Act also forbids debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f, which includes attempting to collect amounts not permitted by law, *id.* § 1692f(1), and it bars collectors from engaging in other oppressive or harassing conduct, *id.* § 1692d.

Because the FDCPA prohibits debt collectors from misrepresenting the legal status of a debt and from seeking to collect amounts not permitted by law, courts have held that a debt collector violates the Act when it sues a consumer for legally

unattainable relief. *See, e.g., Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 683 (7th Cir. 2017) ("[A] debt collector violates the Act by suing to collect a consumer debt after the statute of limitations has run and bars the suit."), *cert. denied*, 138 S. Ct. 736 (2018). In *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013), for instance, the Seventh Circuit observed that bringing a lawsuit against a consumer on a time-barred claim violates § 1692e and § 1692f because such an action is likely to mislead and unfairly pressure unsophisticated consumers to acquiesce on unrecoverable claims. *Id.* at 1079 (citing *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987)); *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1020 (7th Cir. 2014) ("[A] debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable.").

Similarly, in *Gearing v. Check Brokerage Corp.,* 233 F.3d 469 (7th Cir. 2000), the Seventh Circuit held that a debt collector violated § 1692e by suing on a debt it was not entitled to enforce. There, the debt collector sued a consumer for two bad checks he wrote to a convenience store. *Id.* at 471. The debt collector asserted a right to enforce the checks as the payee's subrogee, but it did not meet the criteria Illinois law requires to claim a right of subrogation. *Id.* at 471-72. The court concluded that the debt collector violated § 1692e of the FDCPA by falsely claiming

7

a legal status it did not actually have. *Id. at* 472; *see also Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 944 (N.D. Ill. 2012) ("The filing of a legally defective debt collection suit can violate § 1692e where the filing falsely implies that the debt collector has legal recourse to collect the debt.").

The Act also articulates an affirmative defense:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

*Id.* § 1692k(c).

The Seventh Circuit recently reiterated that the bona fide error defense requires a debt collector to make three affirmative showings: "(1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error ... ; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." *Abdollahzadeh v. Mandarich Law Group*, LLP, 922 F.3d 810, 815 (7th Cir. 2019)(quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (alteration in *Abdollahzadeh*).

Here, the Teveres assert that Weltman violated the FDCPA by falsely asserting Old National's entitlement to a deficiency judgment on the Note in the foreclosure complaint because Illinois'

8

single-refiling rule barred Old National from pursuing a deficiency claim in that action. Weltman further violated the statute, the Teveres claim, by forging ahead with the foreclosure action and seeking an order of default and judgment of foreclosure even *after* the state court dismissed the second collection action with prejudice. Weltman denies that it violated the statute, but invokes the bona fide error defense in the alternative, arguing that it is excused from liability because the litigation it pursued on Old National's behalf was based on a good faith belief that Old National was entitled to the relief it pursued in the foreclosure action.[1]

Weltman's response on the first issue—whether it violated the FDCPA—fails to confront the factual or legal foundation for plaintiffs' claims. On the question of whether the foreclosure complaint constituted a prohibited third filing of Old National's collection action, Weltman doggedly insists that because *quasi in rem* foreclosure proceedings are legally distinct from *in personam*

---

[1] Weltman does not dispute that the FDCPA's threshold requirements are satisfied, i.e., that it is a debt collector under 15 U.S.C. § 1692a(6) and that the Teveres are consumers owing a personal debt as defined in 15 U.S.C. § 1692a(3) and (5). Weltman also does not contest that the foreclosure complaint and the motion for default qualify as actionable communications under the FDCPA. *See* 15 U.S.C. § 1692a(2); *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 471 (7th Cir. 2000); *Kabir v. Freedman Anselmo Lindberg LLC*, No. 14 C 1131, 2015 WL 4730053, at *3-4 (N.D. Ill. Aug. 10, 2015).

proceedings on a promissory note, the foreclosure action was not a refiling of its previous collection claims. Setting aside that the state court has already resolved this question adversely to Weltman,[2] Weltman's argument ignores the fact that Old National's foreclosure action—its third lawsuit against the Teveres—explicitly seeks a "personal Judgment for deficiency, if applicable and sought" under the same Note it asserted in its two previous actions. That is sufficient to trigger Illinois' single-refiling rule. *See First Midwest Bank v. Cobo*, ---N.E.2d---, 2018 WL 6240544, at *3 (Ill. Nov. 29, 2018).

In *Cobo*, the Supreme Court of Illinois applied the "transactional test" Illinois courts have long used to determine whether a successive action is barred by the single-refiling rule to a series of lawsuits involving a loan agreement and mortgage. The court held that a lawsuit for breach of a promissory note asserts "the same cause of action" as a foreclosure complaint that requests "a deficiency judgment based on the same default of the

---

[2] Weltman tacitly concedes that it is precluded from relitigating the state court's decision, insisting that it is "not asking this Court to overturn state court rulings." Def.'s Reply at 9. Yet, the substance of Weltman's argument—"that ONB *did* have assignee rights in the Teveres' Mortgage and their Note," and that "the Foreclosure Action sought the *quasi in rem* remedy of possession and not the *in personam* remedy of repayment of the loan," *id*., is irreconcilable with the state court's decisions. Nevertheless, I address Weltman's argument on the merits because plaintiffs filed this action for violation of the FDCPA before the state court dismissed the foreclosure action as barred by the single-refiling issue.

same note." *Id*. at \*1. The court went on to conclude that pursuant to the single-refiling rule, a lender cannot "assert a claim under the mortgage and the note concurrently by seeking a foreclosure and deficiency judgment and then assert a claim under the note consecutively twice more." *Id*. at \*6.

That is essentially what Weltman did here, asserting two consecutive claims on the Note, followed by a foreclosure action requesting a deficiency judgment. Weltman strains to differentiate *Cobo* on the basis that in that case, the foreclosure/deficiency action preceded rather than followed the two consecutive actions on the note. But nothing about the *Cobo* court's analysis suggests that the ordering of the claims was material to its conclusion. The crucial question was whether the third action asserted a claim that had already been twice pursued, and on that front, there is no difference between this case and *Cobo*.

Nor does Weltman's incantation of the general principle that foreclosure actions and collection actions may be pursued concurrently or consecutively alter the analysis. *See Turczak v. First Am. Bank*, 997 N.E. 2d 996, 1000 (Ill. App. Ct. 1st Dist. 2013) ("[W]ell-settled Illinois case law permits lenders to bring separate enforcement actions on the mortgage and note."); *Farmer City St. Bank v. Champaign Nat'l Bank*, 486 N.E.2d at 306 (Ill. App. Ct. 1st Dist. 1985) (a judgment of foreclosure on a mortgage is "a separate and distinct remedy" from a damages award on a

11

promissory note and the "remedies may be pursued consecutively or concurrently"). Indeed, the *Cobo* court reaffirmed that principle and explained that its decision was "consistent" with *Turczak* and *Farmer City*. *Cobo*, 2018 WL 6240544, at *7.

To sum up, both before *Cobo* and since, Illinois law has allowed lenders to seek foreclosure, a deficiency judgment, or both, and to do so consecutively or concurrently. But at least since the Supreme Court of Illinois announced the single-refiling rule in *Flesner v. Youngs Development Company*, 582 N.E.2d 720 (Ill. 1991), it has prohibited litigants from asserting *any* claim in more than two successive lawsuits. *Cobo* merely made explicit that the single-filing rule applies with equal force in the context of actions involving mortgage foreclosures and loan defaults.

*Cobo* thus leaves no room for dispute that Weltman ran afoul of the single-refiling rule by incorporating its request for a deficiency judgment into the foreclosure action it filed on Old National's behalf. And because an unsophisticated consumer would have been unlikely to appreciate that Old National was legally barred from pursuing that request (indeed, Weltman itself continues to resist that conclusion), Weltman violated the FDCPA on the same stroke. *See Bauer v. Roundpoint Mortg. Servicing Corp.*, No. 18 C 3634, 2018 WL 5388206, at *5 (N.D. Ill. Oct. 29, 2018) (threat to file a suit barred by the single-refiling rule can be deceptive under the FDCPA). *See also Pantoja*, 852 F.3d at 683;

12

*Phillips*, 736 F.3d at 1079; *McMahon*, 744 F.3d at 1020; *Gearing*, 233 F.3d at 471-72; and *Grant-Hall*, 856 F. Supp. 2d at 944.

It is no answer to profess a pure heart. *See* Def.'s Mem. and Resp., *passim*. While unintentional errors may be excused if the debt collector establishes each element of the bona fide error defense (which Weltman has not done, as discussed below), "good faith" is not generally a defense to FDCPA liability. *See Jerman*, 559 U.S. at 594 (good-faith misinterpretation of the law does not establish the "categorical protection of the bona fide error defense."); *Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492, 499 (7th Cir. 2017) (en banc) (FDCPA liability not subject to a "broad exception for good-faith legal errors").

At all events, even assuming that Weltman held a genuine if mistaken belief that Old National's foreclosure action was not barred by the single-refiling rule, Weltman continued to pursue Old National's request for a personal deficiency judgment on the Note even after that claim was unequivocally barred by the state court's dismissal of the second collection action with prejudice. Weltman argues that the dismissal reflects the court's erroneous determination that Old National was not entitled to enforce the Note, and insists that it pursued the foreclosure action based on its good faith disagreement with the court's conclusion and enduring belief that Old National was indeed entitled to assert rights under the Note. But Weltman was not free to disregard the

13

court's ruling. Whatever Weltman's subjective view of the court's decision, that decision stands as the last word on the parties' respective rights and obligations under the Note. Having failed to appeal the state court's determination that Old National had no right to collect a money judgment on the Note from the Teveres as a result of their May 2012 default, Weltman was obliged to stand down from further efforts on Old National's behalf to recover the amounts the Teveres allegedly owed it as a result of that same default.

Yet, Weltman continued to litigate Old National's foreclosure action *in toto*, with no sign of retreat from its barred claim for a deficiency judgment on the Note. To the contrary, Weltman filed a motion for an order of default and judgment of foreclosure, to which it attached an "Affidavit of Amounts Due and Owing" that identified the Teveres' balance on the Note, interest, and additional fees and costs as among the amounts outstanding. It is true, of course, that Weltman had to prove the Teveres' default on the Note to establish Old National's entitlement to foreclosure, and the Affidavit served that purpose regardless of whether the bank was also seeking to hold the Teveres personally liable for any deficiency. But as long as the claim for a deficiency judgment remained pending, the default motion and accompanying recitation of "Amounts Due" would certainly have led an unsophisticated consumer to believe that he or she *could* be held liable for a

14

deficiency if the bank prevailed. Yet the Teveres could not be liable to Old National because Old National's claim for a personal deficiency judgment on the Note was extinguished upon dismissal of its second collection action.

Weltman's observation that a default order and judgment of foreclosure does not finally determine the parties' rights or terminate the litigation is irrelevant to whether Weltman violated the FDCPA. By filing the motion for a default order and judgment, Weltman reaffirmed its full-throated pursuit of the foreclosure action and implied that the Teveres could be liable for a deficiency judgment if Old National prevailed in the action when, in fact, Old National could no longer pursue the deficiency judgment it claimed in the foreclosure complaint. That implication violated the FDCPA. *See Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362, 367 (7th Cir. 2018) (debt collector's statement is false and misleading if it "impl[ies] that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass") (quoting *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) (alteration in *Boucher*).

Nor has Weltman established that liability for its violations is excused under the bona fide error defense. Weltman argues that any violation was due to a good faith misinterpretation of state law, but the Seventh Circuit has never applied the defense to legal errors. *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 803 (7th

15

Cir. 2009) (observing that it had "not taken a side" on the circuit split that existed on the question prior to *Jerman*). In *Jerman*, the Court confirmed that the defense does *not* excuse FDCPA violations that result from a mistaken interpretation of the statute itself; but it declined to resolve whether it may apply to violations "resulting from a misinterpretation of the requirements of state law." 559 U.S. 573 at n.4. And while the Seventh Circuit has not foreclosed the possibility of applying the defense in such circumstances, Weltman advances no compelling basis for charting new territory here.

Weltman's central argument revolves around its narrative of an "evolution of Illinois law concerning mortgage foreclosures and lawsuits on promissory notes." Def.'s Resp. at 19. But as discussed above, *Cobo* did not depart from the principles of *Turczak* and *Farmer City*—the cases that Weltman claims support its interpretation of the law. Nor is there merit to Weltman's argument that the Illinois Appellate Court's successive decisions in *LSREF2 Nova Investments III, LLC v. Coleman*, 2014 IL App (1st) 140184 ("*Coleman I*") and *LSREF2 Nova Investments III, LLC v. Coleman*, 33 N.E. 3d 1030 (Ill. App. Ct. 2015) ("*Coleman II*") (withdrawing and superseding *Coleman I*), injected "confusion and uncertainty" into Illinois law regarding the "relatedness of suits on notes to mortgage foreclosure suits." Def.'s Mem. at 10. By the time Weltman filed Old National's foreclosure action, the *Coleman II* court had

16

already held that a foreclosure judgment in an action seeking both foreclosure and personal liability on a promissory note precludes a later action to enforce the promissory note. Moreover, it did so by applying the same "transactional test" it had applied in *Turczak* and *Farmer City*, and the same framework and principles the Supreme Court of Illinois later embraced in *Cobo*. Contrary to Weltman's argument, these cases are all in alignment, and none authorized Weltment to do what it did here: file two consecutive suits for a personal deficiency judgment on the Note, then pursue a third action seeking both foreclosure of property and a personal deficiency judgment based on the same default of the same Note.

Weltman might have been on firmer ground had it cast its mistake as a factual one, acknowledging its error in pursuing a third claim for money damages against the Teveres and arguing that it included the deficiency judgment claim in Old National's foreclosure complaint as a matter of routine practice, while inadvertently failing to detect that the parties' litigation history prevented it from doing so here.[3] *See Abdollahzadeh*, 922 F.3d 810, 817 (7th Cir. 2019) (debt collector's "failure to notice" that collection records showed that collection claim was time-barred supports bona fide error defense). But that is not the tenor

---

[3] I do not mean to suggest that the facts support this construction, only to observe the law of this circuit is friendlier to this theory.

17

of Weltman's argument. Instead, Weltman tries to justify its prohibited litigation strategy by spinning ambiguities in the law where none exist. That is not a "mistake" the bona fide error defense is intended to excuse.

## III.

For the foregoing reasons, I grant plaintiffs' motion for summary judgment and deny defendant's motion.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: June 3, 2019